Corbin v. Dale.

————o————

OVID H. CORBIN and ANDERSON B. EVERETT, Plaintiffs in Error, *vs.* TIMOTHY R. DALE and JAMES H. DALE, Defendants in Error.

1. *Land containing spring of water—Dedication of.*—The first part of a certain paper bound the proprietors of a tract of land adjoining the town of Liberty, to allow the citizens of that place " the free privilege of drinking water," out of a spring embraced in the tract. The latter part reserves the special site about the spring from sale, for the benefit of the citizens; but the proprietors were allowed to make any use of the spring which would not "prevent the citizens of said town from using it."

*Held,* that the proper intent of the instrument was to dedicate the spring to the citizens of Liberty, not merely for drinking purposes, but for any other use provided its capacity was not diminished for drinking purposes.

*Error to Clay Circuit Court.*

*Sam'l Hardwick and Henry Smith*, for Plaintiffs in Error.

*D. C. Allen*, for Defendants in Error.

NAPTON, Judge, delivered the opinion of the court.

This action was brought in 1872, to recover damages against the defendants for using the water of a spring, alleged to belong to the plaintiffs, for manufacturing purposes.

The petition avers, that on the 9th of March, 1866, the plaintiffs were owners in fee of a certain lot of ground in the town or city of Liberty, which included what is called the " Big Spring ; " that they owned the quarter acre of ground and the spring situated on it, by regular chain of title, excepting that the citizens of Liberty had acquired from the original proprietors the right to procure and use drinking water from said spring; that on said 9th of March, defendants wrongfully, and with force, and against the consent of plaintiffs, entered upon said land and commenced using water from said spring for manufacturing purposes, until the 30th of March, 1867. The petition then alleged damages to the amount of $111.11, and asks a judgment for the same.

The answer contains a general denial of the allegations of the petition relating to ownership, and then sets up specially, that on the first of April, 1822, Angus L. Langham and Duff Green were owners of the quarter acre and the spring thereon, and by their deed dated on that day, granted the said quarter acre and spring thereon to the citizens of the town (now city) of Liberty, in fee simple; and that during the time mentioned in said petition, the citizens of Liberty were, and still are, the owners in fee of said land and the spring thereon ; and during that time the defendants lawfully entered upon said quarter acre and used the water of said spring for manufacturing purposes, at the mills in the original bounds of the town of Liberty, known as the Valley Mills; and that in doing so they did not interfere with plaintiff's use of the same, nor of that of the citizens of Liberty.

There was a replication filed, denying such a deed to the citizens of Liberty as this defendants set up.

On the trial, this paper referred to in the pleadings was read; and as the case turns chiefly on its construction it is here inserted:

"Know all men by these presents, that I, Angus Lewis Langham, of the county of St. Louis and State of Missouri, and Duff Green, of the county of Chariton and State aforesaid, do bind ourselves, our heirs and assigns firmly in the sum of one thousand dollars, to the commissioners of Clay county, that we will give the citizens of the town of Liberty free privilege of drinking water out of a spring that is on a New Madrid location, which is located on the south-east quarter of section seven, in range thirty-one, and township fifty-one, and on part of the north-west quarter of section eight in the same range and township. It is expressly understood that there is one quarter of an acre, together, including the big spring that is on the south-east quarter of section seven in the above mentioned range and township, to be reserved by the proprietors free from sale, for the use and benefit of the citizens of said town of Liberty—but it is also understood that the commissioners of said county are not to prevent the proprietors of (*sic.*) making any use of said spring that they may want, so as it does not prevent the citizens of said town from using water. As witness we hereunto set our hands and seals this 1st day of April, 1822.

MARTIN PALMER,

{ SEAL }  Agent in fact for
ANGUS LEWIS LANGHAM and DUFF GREEN.

Attest, THOMAS OFFICER,
SHUBACK ALLEN.

The plaintiffs then offered a chain of title from Green to them, for the quarter acre on which the spring was located, and other land adjoining. To all these deeds the same specific objections were made, and the court excluded them. These objections were, in substance, that they contradicted the grant from Langham and Green, or rather, were inconsistent

with that paper; that Langham and Green could convey no title to any one of said quarter acre, after their deed to the commissioners of Clay county; that they could have no assignees in regard to said land and spring; that they became at all events trustees for the inhabitants of the town of Liberty, subject to the uses declared in that paper; and finally, that the water of a spring was running water, and that no property could be acquired in running water, and that no action could be maintained for using it. These objections were sustained by the court.

The plaintiffs then offered to show that they had occupied said property, actually and adversely, for more than ten years before the institution of this suit; but this was excluded by the court, on the ground that the petition set up no title by occupancy for a period sufficient to give them a title under the statute of limitations.

The plaintiffs then proposed to prove the value of the water used, and the amount of damage resulting from such use, but as the court held that they had no case, this evidence was of course excluded. And thereupon, the court gave judgment for defendants.

There were the usual motions for new trial and in arrest; and the usual exceptions taken, without which we could not consider the case.

It is obvious that the merits of the case depend on the construction of the paper signed by the agent of Langham and Green. There is no plausibility in the construction claimed, that it was a conveyance in fee simple to the commissioners of the quarter acre and the spring. It was at most a dedication of the spring to the citizens of Liberty, for drinking purposes. Probably in 1822, when this privilege was conceded, no doubt with a view to effect a sale of the New Madrid claim, which the grantors owned, any use of the spring water for manufacturing purposes was not thought of by either party.

The first part of the paper called a deed, and we may so consider it, binds the proprietors to allow the citizens of

Liberty the "free privilege of drinking water" out of the spring. The latter part reserves the quarter acre on which the spring is from sale, for the benefit of the citizens of the town of Liberty; but the proprietors are allowed to make any use of said spring which will not "prevent the citizens of said town from using it."

Did the original owners of this spring intend to dedicate it to the citizens of Liberty as a fountain of water to which they could always resort for drinking purposes only; or did they mean that the citizens could use it for any purpose, provided its capacity was not diminished for drinking purposes? I think the latter is the fair interpretation, and that it matters not to what use the water is applied, if a citizen of Liberty so uses it as not to impair its capacity to supply drinking water.

It is said by Blackstone, in his description of the origin of property, that there are some few things, which, notwithstanding the general introduction and continuance of property, must still unavoidably remain in common, being such wherein nothing but an usufructuary property is capable of being had; and therefore they still belong to the first occupant, during the time he holds possession of them, and no longer. "Such among others, are the elements of light and water, which a man may occupy by means of his windows, his gardens, his mills and other conveniences, * * * all these things, so long as they remain in possession, every man has a right to enjoy without disturbance, but if the use of them is voluntarily abandoned, they return to the common stock, and any man has an equal right to seize and enjoy them afterwards."

And so Mr. Justice Holroyd in Williams vs. Morland, (2 Barn. & Cress., 913) observes, that "running water is not in its nature private property. At least it is private property no longer than it remains on the soil of the person claiming it. Before it came there it clearly was not his property. It may perhaps become *quasi* the property of another before it comes upon his premises, by reason of his having appropriated to himself the use of the water accustomed to flow

through his lands, before any other person has acquired a prior right to it." And Mr. Justice Bayley in the same case says: " Flowing water is originally *publici juris*. So soon as it is appropriated by an individual, his right is co-extensive with the beneficial use to which he appropriates it. Subject to that right all the rest of the water remains *publici juris*."

These declarations are not at all inconsistent with Chancellor Kent's observations in Gardner vs. The Village of Newburgh, that, " a right to a stream of water is as sacred as the right to the soil over which it flows. It is a part of the freehold of which no man can be deprived but by lawful judgment of his peers or by due process of law;" and he says again, " it is a clear principle in law, that the owner of land is entitled to the use of a stream of water which has been accustomed to flow through it, and the law gives him ample remedy for the violation of this right. To divert or obstruct a water course is a private nuisance."

These general principles in regard to property in water are not disputed. The ownership of a piece of ground on which there is a spring, would of course carry with it the ownership of the spring, and of the outlet or branch conveying the water from the spring, so far as it is on the land of the owner of the spring. And in such case no stranger would have the right to the use of the spring or branch, without consent of the owner, since such use could not be had except by a trespass on the owner's land.

This case seems to have been determined on the question of ownership of the quarter acre on which the spring is located, and the court must have decided, either that Langham and Green's grant or deed of April 1, 1822, was a conveyance in fee simple of the quarter acre to the town of Liberty, or to the commissioners who located it ; or (which is most likely) that this reservation in this deed of the quarter acre from sale, precluded the proprietors of the New Madrid location from conveying this quarter acre to any one, and therefore the chain of title from Langham and Green down to plaintiffs, was not allowed to be read in evidence.

We see no plausible ground for the first position. The paper was not a conveyance of any land to the town of Liberty or the commissioners. Assuming, however, that it was a reservation of the quarter acre from sale, it is difficult to see how a breach of such reservation, by conveyance of the entire tract, could be complained of. The grantees would occupy the same position as to this quarter acre, which the grantors did. They would take the land subject to the easement, whatever it was. The title papers from Langham and Green should have been admitted.

The effect of the deed of Langham and Green, in 1822, in regard to this spring, is the real point which ultimately must determine the merits of this case. There can be no question that this deed operated to dedicate this spring to the citizens of Liberty for drinking water.

The real question is, whether they may not use it also, as the proprietors may, for other purposes, provided such use does not impair its capacity to supply the demand for drinking.

There are no facts disclosed in this record which furnish any explanation of the manner in which defendant's mill was supplied with water; whether it was brought directly from the spring or from the spring branch, or whether its use in this respect, tended to impair its use for drinking purposes.

The case was obviously decided on the question of ownership of the quarter acre on which the spring is situated ; and, as the plaintiffs were held to have no ownership of this land, they had of course no right to complain about the use of the water on it.

The proprietors undoubtedly retained the right to use the spring in any way they pleased, that would not impair the capacity of the spring to furnish drinking water to the citizens of Liberty. It was a primary object in the deed to the commissioners to assure them of a full supply of water in their town, proposed to be the county seat, and that the citizens should have the free use of it.

In the first part of this dedication, they speak only of water for drinking purposes; in the latter part, it is referred to as for the use of the town, generally, without specifying its purpose. No use, either by the citizens or the proprietors, was allowed which would impair the capacity of the spring to furnish drinking water. This is clear. Whether its use for manufacturing purposes would affect this capacity or not, does not appear.

The defendants could have no right to trespass on the land of plaintiffs to get a supply of water for their mill. Whether they did so or not, does not appear in this case. It is so alleged in the petition; but the court decided the case on the ground that the town of Liberty owned the land on which the spring is located.

We shall reverse the judgment, to let in the title of plaintiffs, and ascertain on what grounds the defendants claim the right to use the water in their mill, and how they have exercised it.